**Jackson LEEDS, Plaintiff,**

v.

**Hon. Robert A. MOSBACHER, et al., Defendants.**

**Civ. A. No. 89–1857.**

United States District Court, District of Columbia.

Feb. 13, 1990.

Nathan Dodell, Asst. U.S. Atty., Washington, D.C., and Fred E. McKelvey, Solicitor, Arlington, Va., for defendants.

Glenn H. Carlson, Carlson, Cafferty & Ferris, P.C., Washington, D.C., for plaintiff Jackson Leeds.

## MEMORANDUM OF OPINION AND ORDER

REVERCOMB, District Judge.

Plaintiff Jackson Leeds here challenges the Patent and Trademark Office's ("PTO") decision requiring plaintiff to take and pass an examination as a condition to being registered to practice before the PTO in patent cases. At bar are Defendants Honorable Robert A. Mosbacher, Honorable Donald Quigg, Cameron Weiffenbach, and the United States's motion to affirm the Patent Commissioner's decision and plaintiff's motion to quash the Commissioner's decision. Also pending is plaintiff's motion for reconsideration of the Court's protective order of August 14, 1989.

## I. *Regulatory Framework.*

 The primary responsibility for protection of the public from unqualified practitioners before the Patent Office rests in the Commissioner of Patents, and *not* in the courts. *Kingsland v. Dorsey*, 338 U.S. 318, 320–321, 70 S.Ct. 123, 124–125, 94 L.Ed. 123 (1949); *Cupples v. Marzall*, 101 F.Supp. 579, 583 (D.D.C.1952), *affirmed*, 204 F.2d 58 (D.C.Cir.1953). In carrying out this responsibility, the Patent Commissioner has established regulations governing the recognition of agents and attorneys entitled to practice before the PTO. 35 U.S.C. § 31. Included in the regulations is a requirement that applicants establish that they are competent to assist patent applicants in the presentation and prosecution of their patent application. 37 C.F.R. § 10.7(a)(2)(iii).[1] As part of the competency requirement, the Director of Enrollment and Discipline administers an examination designed to test the applicant's knowledge of patent law and PTO procedure. Because patent examiners tend to become familiar with applicable patent law and PTO procedures in their day-to-day work, the "taking of an examination *may* be waived in the case of any individual who has actively served for at least four years in the patent examining corps of the Office." 37 C.F.R. § 10.7(b). It is this examination and the Patent Commissioner's refusal to waive it for Mr. Leeds that is the subject of this lawsuit.

## II. *The Record.*

In 1988 plaintiff Jackson Leeds was employed as a Patent Examiner, Chemical Engineering, GS–1224–12, in Group 110, Art Unit 113. On June 22, 1988, the Director of Group 110 proposed plaintiff's removal for five instances of misconduct (failure to perform work as assigned), and unacceptable performance in three critical elements of his position. The Group Director also considered plaintiff's prior record of a two-day suspension on August 19, 1987 for destroying another employee's work product, and a 14–day suspension on March 30, 1988 for failure to follow orders.[2] On July 20, 1988, the Assistant Commissioner for Patents found that the evidence supported the Group Director's charges and mandated plaintiff's removal from Federal service. Adm.Rec. 0008–0009.

Two days later, on July 22, 1988, Mr. Leeds filed an application seeking to become registered as a patent agent entitled to practice before the PTO. Adm.Rec. 0054–0056. In his application, plaintiff requested that the competency examination be waived since he had worked as a Patent Examiner for six years. Adm.Rec. 0054.

On September 14, 1988, the Office of Enrollment and Discipline ("OED") acknowledged receipt of plaintiff's application and promised that plaintiff's application would "be taken up in due course" after the consideration of another pending application. Adm.Rec. 0058. Four months later, on January 19, 1989, OED requested Mr. Leeds to supplement his application. Adm.Rec. 0059–0061. After receiving an extension of time to respond to OED's request, Mr. Leeds, with the aid of his attorney, provided almost two hundred pages of supplemental material on March 17, 1989. Adm.Rec. 0062–0236.

Meanwhile, the Merit System Protection Board (MSPB) affirmed the decision to terminate Mr. Leeds by an initial decision on November 29, 1988, and by a final decision on April 25, 1989. Adm.Rec. 0008–0041. The United States Court of Appeals for the District of Columbia later affirmed the termination decision without opinion. *Leeds v. Department of Commerce*, 887 F.2d 1095 (Fed.Cir.1989).

On May 24, 1989, two months after plaintiff had supplemented his application, plaintiff's attorney requested OED to "immediately" render a decision on Mr. Leeds' ap-

---

1. An applicant is also required to establish to the satisfaction of the Director that he or she "possess[es] the legal, scientific, and technical qualifications necessary to enable him or her to render applicants for patents valuable service." 37 C.F.R. § 10.7(a)(2)(ii).

2. This suspension was later reduced to a 10–day suspension as a result of an arbitrator's decision, and was considered by the deciding official as a 10–day suspension.

plication. Adm.Rec. 0238. Six days later, the OED Director formally refused to waive the examination requirement in light of plaintiff's removal for unsatisfactory performance as a Patent Examiner. This decision was "final" but could be appealed by petition to the Commissioner of Patents. Adm.Rec. 0239; see also 37 C.F.R. § 10.2.

On June 29, 1989, plaintiff, through his counsel, appealed by petition letter to the Commissioner of Patents. Plaintiff requested the Commissioner to waive the examination requirement and to fully recognize him as an agent authorized to practice before the Patent and Trademark Office. Plaintiff also purportedly offered the petition "to protect the record," as he had simultaneously filed this action in federal court. Adm.Rec. 0246. The Commissioner issued his decision six days later on July 5, 1989. The Commissioner agreed with the Director and required plaintiff to take the examination. However, the Commissioner noted that the Director had taken "too long" to notify plaintiff that he would be required to take the examination. Hence, the Commissioner directed OED (at plaintiff's option) to prepare and administer an examination within one month. Any investigation of Mr. Leed's "character" was to be completed within two weeks of the date that plaintiff was notified of a passing grade. The Commissioner further ordered that if plaintiff passed the exam and there were no evidence of bad character, plaintiff's name was to be published for public comment as is standard PTO practice. Assuming no adverse comments were received, registration was to take place "forthwith." Adm.Rec. 0007.

---

**3.** Plaintiff's claim is also quite odd as it was *Mr. Leeds* who requested the Patent Commissioner's review. At no time did plaintiff seek a Temporary (or Preliminary) Injunction to restrain the Commissioner from issuing a decision.

**4.** Plaintiff's claim that this "is *not* an exhaustion of administrative remedies nor a final decision case," but rather "an action in the nature of mandamus" (*Motion to Quash Decision of Agency,* p. 3, n. 1) does not magically create jurisdiction in this Court. *Cupples v. Marzall, supra,* 101 F.Supp. at 580; see also *Myers v. Bethlehem Corp., supra,* 303 U.S. at 51, 58 S.Ct. at 463–64 (rule requiring exhaustion of the administrative

### III. Whether the Commissioner had Jurisdiction to Order Plaintiff to take and Pass the Examination.

■ Plaintiff asks this Court to completely ignore the Patent Commissioner's decision, claiming that the Commissioner lacked jurisdiction because the plaintiff had already filed this action in federal court. Plaintiff's claim lacks merit.[3] It was this Court, and not the Patent Commissioner, that lacked the authority to act on June 29, 1989 since, at that time, plaintiff had not exhausted his administrative remedies.[4] See *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938) (no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted); *Peter Kiewit Sons' Co. v. Army Corps. of Engineers,* 714 F.2d 163, 167–168 (D.C.Cir. 1983).

Plaintiff's reliance on *California v. Federal Power Commission,* 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962), is misplaced. That action involved the Federal Power Commission's improper evaluation of alleged antitrust violations in a particular transaction that had also been challenged in federal court. Unlike here, the administrative agency in *California v. Federal Power Commission* had no priority of jurisdiction or first right of administrative review.

### IV. Whether the Commissioner's Decision was Arbitrary and Capricious.

■ This Court may not disturb the Patent Commissioner's decision of July 5, 1989

---

remedy cannot be circumvented by asserting that the holding of the prescribed administrative hearing would result in irreparable damage). Plaintiff has misread *Potomac Elec. Power Co. v. I.C.C.,* 702 F.2d 1026 (D.C.Cir.1983). There, the United States Court of Appeals had jurisdiction to review an agency's actions under its inherent power to construe the Court's *earlier* order *and,* independently, under its power to review final administrative decisions. *Potomac Elec. Power Co., supra,* 702 F.2d at 1030. In the instant case, however, there was (and is) no prior order for this Court to construe; nor was there a final administrative action for it to review.

unless it finds that the Commissioner *abused his discretion* in refusing to waive the examination requirement. *Slater v. Quigg*, 647 F.Supp. 8, 9 (D.D.C.1986). An abuse of discretion may be found if (1) the decision below is unreasonable, arbitrary, or fanciful, (2) the decision below is based on an erroneous conclusion of law, (3) findings made below are clearly erroneous, or (4) the record contains no evidence upon which the tribunal below rationally could have based its decision. *Western Electric Co. Inc. v. Piezo Technology, Inc.*, 860 F.2d 428, 430–431 (Fed.Cir.1988).

In deciding whether to waive the examination requirement for Mr. Leeds, the Patent Commissioner relied on the Merit Systems Protection Board (MSPB) decisions terminating plaintiff for his unsatisfactory performance as a Patent Examiner.[5] Adm. Rec. 0001–0007. Among other things, the MSPB found that the *substantial unrebutted* evidence demonstrated that Mr. Leeds' performance in Critical Element No. I, Performance of Patent Examining Functions, was unsatisfactory. Adm.Rec. 0016. Plaintiff had received an unsatisfactory performance rating for fiscal year 1987 and an oral warning of unsatisfactory performance in "Performance of Patent Examining Functions." Plaintiff was given a four month opportunity to improve his performance. After plaintiff failed to improve, he was issued a written warning of unsuccessful performance in "Patent Examining Functions," and was given a 90–day period to improve. Adm.Rec. 0014–0015. During this opportunity period, plaintiff's error rate in "Patent Examining Functions" was 25 percent—well over the seven percent error rate allowed to meet the "minimally

satisfactory" level. In addition to making significant errors, Mr. Leeds also made other minor errors such as using garbled sentences, incorrect patent numbers or application numbers, erroneous dates, and making numerous typographical errors. Adm.Rec. 0016.

As a result, the Patent Commissioner found that

> [i]n view of the evidence before the MSPB *and* its decision affirming petitioner's removal from Federal service based on unsatisfactory performance in the critical performance element "Performance of Patent Examining Function," OED's decision to require petitioner to take and pass the registration examination to establish his competence in patent law and procedure was proper. Adm.Rec. 0005–0006.

The Commissioner continued,

> Here, the petitioner has been removed from Federal service based partly on unsatisfactory performance of patent examining functions. Under these circumstances, it would be inappropriate to waive the examination that is used to ascertain competence in patent law and procedure. Accordingly, OED's decision requiring that petitioner take the registration examination is *affirmed.* Adm. Rec. 0006.

■ Plaintiff's case rests primarily on the theory that PTO's delay in notifying plaintiff that he had to take the examination was of such bad faith that the Commissioner's decision should be rejected in its entirety. Plaintiff's argument ignores the purpose of administrative review,[6] the deference that this Court must give to the

---

**5.** The Commissioner also noted that plaintiff knew, by his March 17, 1989 letter, that the examination had not been waived Adm.Rec. 0003, 0005. From these comments, plaintiff attempts to argue that the Commissioner acted improperly, "misquoting" plaintiff's March 17, 1989 letter. See Adm.Rec. 0063. Plaintiff's March letter, however, was a transparent attempt to "set up" the PTO as somehow having waived the examination requirement. In that letter, plaintiff's counsel opined that Mr. Leeds had "clearly" met the general application requirements and concluded that the OED's re-

quests were directed to plaintiff's moral character. Counsel "inferred" that OED had "no problem" with plaintiff's competency. Adm.Rec. 0063. The record does not in any way support Counsel's "inferences" and "conclusions." See *infra,* pp. 203–204. More importantly, the Commissioner's opinion demonstrates that his decision requiring Mr. Leeds to take the examination was based on plaintiff's performance record (and *not* Mr. Leed's assessment of the situation). Adm.Rec. 0005, 0006.

**6.** I.e., that the administrative agency have an opportunity to correct its error, if any.

Commissioner and his expertise, and the standard of review by which this Court is bound. Furthermore, the record does not show that the Commissioner's decision was somehow tainted by the agency's earlier delay. The Commissioner acted upon plaintiff's petition within six days and fully attempted to correct the prior delay by ordering early administration of the exam. Plaintiff has made no attempt to demonstrate to this Court that he has the requisite general competency in patent law or PTO procedure[7] and the record suggests that he may not. This Court will *not* order the waiver of a competency examination for a patent agent—a highly specialized and technical position *designed to protect and assist the public*—simply because the Patent Office delayed in processing application materials.

◼ Plaintiff also asserts that the Commissioner improperly relied upon the MSPB termination decision, and uses this action to challenge the MSPB decision itself. The MSPB decisions have been affirmed at all levels and this Court will not again review them. Plaintiff's unsatisfactory performance as a Patent Examiner seems to be highly relevant to and probative of plaintiff's potential technical and general competency. *Opposition to Motion to Affirm Commissioner's Decision,* pp. 4–5.[8] The Commissioner plainly did not act arbitrarily and capriciously by relying on these materials in determining whether to waive the examination requirement.

◼ Plaintiff finally claims that the examination requirement should be waived because he was led to believe, by PTO's delay in notifying him about the examination, that he would not have to take the examination. How a former Patent Examiner who was removed from the Federal service for unsatisfactory performance could believe that the Office of Enrollment and Discipline would not require a competency examination tests the limits of this

Court's imagination. Nevertheless, plaintiff's belief, whether reasonable or not, does not in any way demonstrate that the Commissioner abused his discretion in ordering an examination. The record does not show (as plaintiff seems to suggest) that the Director waived the examination requirement and then reinstated it. The September 14, 1988 letter acknowledging receipt of plaintiff's application made *no* representations about or references to the examination requirement. The January 19, 1989 letter requested information from Mr. Leeds "pursuant to 37 C.F.R. § 10.7(a)(1)," the application provision and *not* the moral character provision. *Compare* 37 C.F.R. 10.7(a)(1) *with* 10.7(a)(2)(i). Contrary to plaintiff's assertion, OED's requests for information were *not* confined to "moral character" issues. Request Number 5 asks Mr. Leeds to "please explain why you did not want to conform to PTO rules and regulations" in a matter in 1988. Adm. Rec. 0061. Request Number 6 asks plaintiff to "please explain why we should ignore each of the [MSPB] findings that in five separate instances you filed to perform and/or complete patent work assignments." The Request continues

... your failure in Element I of your plan where you had an error rate of 25 percent, including failure to harmonize claims with specification disclosure, failure to make a proper or complete search and failure to understand and or apply references against application claims is germane to our determination on your registration application, *even if you had acceptable moral character and repute.* Adm.Rec. 0061.

Request Number 6 further noted that the less significant errors of Element I *"also* bear on your ability to assist applicants for patents in the presentation and prosecution of their applications before the Office." Adm.Rec. 0061. PTO's failure to immediately respond to plaintiff's counsel's "infer-

---

**7.** Plaintiff's general letters of recommendation do not demonstrate that the Commissioner acted arbitrarily when refusing to waive the competency examination.

**8.** "Patent law goes directly to the heart of the MSPB decision in reference to purported errors, including the purported failure to harmonize claims, conduct complete searches, and apply references properly."

ence" that there was "no problem" with respect to plaintiff's competency after just having received 200 pages of supplemental information does *not* in any way constitute a decision to waive plaintiff's competency examination.

Looking at the record and proceedings before the Patent Office, this Court can not conclude that the Patent Commissioner abused his discretion in refusing to waive the examination requirement for plaintiff. (In fact, plaintiff's legal and factual arguments come dangerously close to conduct sanctionable under Rule 11). The Government defendants' motion to affirm the Commissioner's decision is GRANTED and the plaintiff's motion to quash is DENIED. This action IS DISMISSED with prejudice. Plaintiff's motion to reconsider the protective order is DENIED as moot.